```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/25/2017
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEW CANAAN CAPITAL MANAGEMENT,
LLC,

                  Plaintiff,

           - against -

OZADO PARTNERS LLC, SOUTHPORT
ENERGY ASSET MANAGEMENT LLC,
OZADO POWER LLC, GP GENCO LLC,
TODD ESSE, and ERIE POWER LLC,

                  Defendants.

**MEMORANDUM**
**OPINION & ORDER**

16 Civ. 1395 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        This action relates to a contractual dispute arising from the acquisition of a power plant owned by Energy Systems North East, LLC ("ESNE"). Plaintiff New Canaan Capital Management, LLC alleges, inter alia, that Defendants Ozado Partners LLC and Southport Energy Asset Management LLC breached a contract under which Plaintiff was due a cash fee and 20% equity interest in Defendant Erie Power LLC, which was created to acquire the assets of ESNE. The Complaint asserts state law contract and quasi contract claims, and invokes the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

        Defendants have moved to dismiss the Complaint for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). (Dkt. No. 45) Defendants argue that complete diversity does not exist because Ozado Power and Erie Power are non-diverse parties. (Id.) For the reasons set forth below, Defendants' motion to dismiss will be granted.

## BACKGROUND

### I.    THE COMPLAINT'S ALLEGATIONS

Plaintiff New Canaan is a limited liability company that identifies opportunities for the acquisition and development of, inter alia, power plants. (Cmplt. (Dkt. No. 1) ¶ 12) In September 2012, Plaintiff identified a facility owned by Energy Systems North East ("ESNE") as an acquisition target. The facility was located in Pennsylvania on land owned by Welch Foods, Inc. ("Welch"). (Id.) Plaintiff developed plans to sponsor a fund that would form a "special purpose vehicle" – a limited liability company – to acquire the facility's assets and the Welch land, and purchase new equipment for the facility. (Id. ¶ 13) Under the proposed plan, Plaintiff would serve as general partner of the fund and managing member of the special purpose vehicle. (Id. ¶ 14)

In November 2012, Plaintiff met with two individuals who expressed interest in joining the ESNE project: Barney Monte, the managing partner of Defendant Ozado Partners LLC, and Defendant Todd Esse, the sole member of Defendant Southport Energy Asset Management LLC ("Southport LLC"). (Id. ¶¶ 3, 5, 17) As a pre-condition to providing further details concerning the ESNE project, Plaintiff entered into non-disclosure agreements ("NDAs") with Ozado Partners LLC and with Esse in his individual capacity. (Id. ¶¶ 18-20) The NDAs prohibited Ozado Partners LLC and Esse from taking any action to "circumvent" Plaintiff's relationship with ESNE or Welch, and from using Plaintiff's confidential information to pursue business relationships with other entities or individuals. (Id. ¶¶ 19-20)

After negotiation, Plaintiff agreed to relinquish its anticipated role as managing member of the special purpose vehicle and to allow Ozado Partners LLC and Southport LLC to fill that role. (Id. ¶¶ 21-24) Plaintiff further agreed to provide advisory services to Ozado

Partners LLC and Southport LLC to assist them in acquiring the assets of the ESNE facility and the Welch land, to assist in due diligence, and to assist in the closing. (Id. ¶ 25) In exchange, Plaintiff would receive a "cash placement fee . . . equal to three percent (3%) of the total consideration paid for the [ESNE assets and the Welch land] and . . . an equity participation fee . . . of twenty percent (20%) of the common equity of the acquiring entity formed by [Ozado Partners LLC and Southport LLC]. (Id. ¶¶ 22, 25) On January 23, 2014, Plaintiff, Ozado Partners LLC, and Southport LLC executed a written agreement (the "Equity Agreement") that memorialized these terms. (Id. ¶ 23, Ex. C)

After entering into the Equity Agreement, Ozado Partners LLC and Southport LLC created Defendant Erie Power LLC to hold the equity interests in the assets acquired from ESNE. (Id. ¶ 31) On February 28, 2014, Erie Power LLC purchased some of ESNE's assets. (Id.) Plaintiff claims that while it provided a variety of advisory services pursuant to its obligation under the Equity Agreement, at other points Ozado Partners LLC and Southport excluded Plaintiff, and "chose to pursue the negotiation and acquisition independently of any assistance or advice by [Plaintiff]." (Id. ¶¶ 32-35) Plaintiff alleges that it did not become aware of the creation of Erie Power LLC, or its acquisition of ESNE's assets, until December 8, 2014. (Id. ¶ 37) On that date, Ozado Partners LLC and Southport sent a letter to Plaintiff stating that they had created Erie Power LLC, acquired the ESNE assets through Erie Power LLC, and that Erie Power LLC was prepared to issue Plaintiff its equity interest in accordance with the Equity Agreement. (Id. ¶¶ 37-39) The letter also informed Plaintiff that "in the coming week a copy of the Erie Power Limited Liability Company Agreement" would be provided. (Id. ¶ 40)

On December 10, 2015, Ozado Partners LLC sent Plaintiff a draft "First Amended and Restated Limited Liability Company Agreement among Erie Power LLC and The Members

3

Named Herein" ("Draft Restated LLC Agreement") that addressed Erie Power LLC's equity structure. (Id. ¶ 41) The Draft Restated LLC Agreement provides for a class of ownership interest denominated "Class A Units." (Id. ¶ 45) Plaintiff claims that the Class A Units were issued to Defendant Ozado Power LLC and Defendant GP Genco LLC, which are allegedly affiliates of Ozado Partners LLC and Southport LLC, respectively. (Id.) Under the terms of the Draft Restated LLC Agreement, equity distributions are to be made in the following order: (1) Class B Unitholders for their annual return on capital contributed; (2) Class A Unitholders; and (3) Common Unitholders. (Id. ¶ 46) In the Draft Restated LLC Agreement, Plaintiff is listed as a Common Unitholder. (Id.)

The Draft Restated LLC Agreement provides for a preferred yield of $49.5 million, which must be paid to the Class A Unitholders before any payments are made to the Common Unitholders. (Id. ¶ 47) Plaintiff claims that this structure renders its 20% equity interest "worthless." (Id. ¶¶ 43, 47) Plaintiff also claims that the $1 million annual management fee provided to Ozado Partners LLC "greatly exceeds" the industry standard of 2% of equity raised. (Id. ¶ 49)

After reviewing the Draft Restated LLC Agreement, Plaintiff advised Ozado Partners LLC that the proposed agreement was unacceptable. (Id. ¶ 50) Plaintiff alleges that, in response, Ozado Partners LLC and Southport LLC falsely claimed that Plaintiff had not fulfilled its obligations under the Equity Agreement and thus was not entitled to its cash fee or equity interest in Erie Power LLC. (Id.)

## II. PROCEDURAL HISTORY

The Complaint was filed on February 23, 2016, and asserts (1) a breach of contract claim against Defendants Ozado Partners LLC and Southport LLC for their alleged

4

violations of the Equity Agreement; (2) a claim for specific performance of the Equity Agreement against Defendants Ozado Partners LLC and Southport LLC; (3) an unjust enrichment claim against Defendants Ozado Partners LLC and Southport LLC; (4) a quantum meruit claim against Defendants Ozado Partners LLC and Southport LLC; and (5) a breach of contract claim against Defendants Ozado Partners LLC and Todd Esse for violations of the non-disclosure agreement. (Dkt. No. 1) Plaintiff seeks injunctive relief and a constructive trust as to all Defendants,[1] and a declaratory judgment as to Defendants Ozado Partners LLC, Southport LLC, and Erie Power LLC. (See id.) The Complaint alleges that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). (Id. ¶ 9)

On April 12, 2016, Defendants submitted a letter seeking permission to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). (Dkt. No. 27) Defendants argue that there is not complete diversity here, because Plaintiff, Ozado Power LLC, and Erie Power LLC all have members who are citizens of Florida. (Id. at 2)[2] At an April 28, 2016 conference, the Court ordered jurisdictional discovery regarding "the citizenship of the members of Ozado Power [LLC]." (Apr. 28, 2016 Conf. Tr. (Dkt. No. 37) at 11; see also Dkt. No. 36) During that conference, the Court acknowledged that the citizenship of Ozado Power LLC affects the

---

[1] Erie Power LLC is named as a defendant in the Seventh Cause of Action for a declaratory judgment, and both Erie Power LLC and Ozado Power LLC are named as defendants in the Eighth Cause of Action, which seeks a constructive trust. (See Cmplt. (Dkt. No. 1) Seventh Cause of Action, Eighth Cause of Action, at 20-21) The Sixth Cause of Action – for injunctive relief – also names Erie Power LLC and Ozado Power LLC as defendants (see id., Sixth Cause of Action, at 19), but "[i]njunctive relief [is a remedy and] not a cause of action." Ya-Chen Chen v. City Univ. of N.Y., No. 11 Civ. 0320 (CM), 2011 WL 5419792, at *10 (S.D.N.Y. Nov. 9, 2011) (citing Imtrac Indus., Inc. v. Glassexport Co., No. 90 Civ. 6058 (LBS), 1996 WL 39294, at *8 (S.D.N.Y. Feb. 1, 1996)).

[2] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing System.

citizenship of Erie Power LLC, because Ozado Power LLC is a member of Erie Power LLC. (Apr. 28, 2016 Conf. Tr. (Dkt. No. 37) at 11)

On August 15, 2016, after the completion of jurisdictional discovery, Defendants filed a motion to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). (Dkt. No. 45)

### III. DEFENDANTS' MOTION TO DISMISS

Defendants contend that the Complaint must be dismissed for lack of subject matter jurisdiction, because complete diversity does not exist between the parties. (Def. Moving Br. (Dkt. No. 50) at 5-6)

According to the Complaint, Plaintiff is a Delaware limited liability company whose sole member and managing director, Jeffrey Weisz, is domiciled in Florida. (Cmplt. (Dkt. No. 1) ¶ 2) Accordingly, Plaintiff is a citizen of Florida.

According to Defendants, Fortune and Angela Monte (the "Montes") are members of Defendant Ozado Power LLC. (Cohen Decl. (Dkt. No. 48) ¶¶ 4-5, Exs. B, C) Defendants argue that the Montes – who the parties agree abandoned their New York domicile in 2011 (Def. Moving Br. (Dkt. No. 50) at 7-9, 13-15; Pltf. Opp. Br. (Dkt. No. 51) at 19, 23; Pltf. Reply Br. (Dkt. No. 56) at 4-5) – moved to Florida in 2011 and were citizens of Florida when the Complaint was filed. (See Def. Moving Br. (Dkt. No. 50) at 7-10, 13-20; Def. Reply Br. (Dkt. No. 56) at 4) Ozado Power LLC is thus a citizen of Florida, see Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 49 (2d Cir. 2012) ("[A] limited liability company . . . takes the citizenship of each of its members."), and because Ozado Power LLC is a member of Defendant Erie Power LLC (Cohen Decl. (Dkt. No. 48) at ¶ 6, Ex. D), Erie Power LLC is also a citizen of Florida. (Def. Moving Br. (Dkt. No. 50) at 9 n.2) Defendants thus

6

contend that complete diversity does not exist, because Defendant Ozado Power LLC and Defendant Erie Power LLC share common citizenship with Plaintiff. (Def. Moving Br. (Dkt. No. 50) at 5-6, 13 n.2)

Plaintiff contends, however, that after leaving New York the Montes established their new domicile in Virginia – not Florida – and therefore neither Ozado Power LLC nor Erie Power LLC is a citizen of Florida. (Pltf. Opp. Br. (Dkt. No. 51) at 18-23)

Accordingly, the issue this Court must resolve is whether the Montes were domiciled in Florida or in Virginia as of February 23, 2016, when the Complaint was filed.

## DISCUSSION

### I. LEGAL STANDARD

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction)[.]" Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007) (citation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "'[T]he party asserting subject-matter jurisdiction . . . has the burden of proving its existence by a preponderance of the evidence.'" Chen v. Sun, No. 13 Civ. 00280 (ALC) (KNF), 2016 WL 270869, at *1 (S.D.N.Y. Jan. 21, 2016) (quoting Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc., 697 F.3d 59, 65 (2d Cir. 2012)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." Makarova, 201 F.3d at 113.

Pursuant to 28 U.S.C. § 1332(a)(1), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States[.]" "'[A] case falls within the federal district court's original diversity jurisdiction only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State.'" Hai Yang Liu v. 88 Harborview Realty, LLC, 5 F. Supp. 3d 443, 446 (S.D.N.Y. 2014) (quoting Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 388 (1998)). For purposes of this inquiry, "[a] limited liability company is a citizen of every state of which any of its members is a citizen." Krause v. Forez Exchange Market, Inc., 356 F. Supp. 2d 332, 336 (S.D.N.Y. 2005); see also Bayerische Landesbank, 692 F.3d at 49 ("[A] limited liability company . . . takes the citizenship of each of its members."). "[W]hether federal diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the action is commenced." Odeon Capital Grp., LLC v. Ackerman, 149 F. Supp. 3d 480, 483 (S.D.N.Y. 2016) (citation omitted).

A.  **The Domicile Determination**

"For purposes of diversity jurisdiction, a party's citizenship depends on his domicile." Linardos v. Fortuna, 157 F.3d 945, 948 (2d Cir. 1998). "Domicile is not synonymous with residence; a party can reside in one place and be domiciled in another." Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy, 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009) (citing Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 47-49 (1989)). "A party's domicile is 'the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" Chen, 2016 WL 270869, at *2 (quoting Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000)).

8

"Where there is evidence indicating that a party has more than one residence, or the residence is unclear, the Court should look to the party's intent." Id. (citing Nat'l Artists Mgmt. Co. v. Weaving, 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991)). In determining a party's intent, courts consider many factors, including:

> current residence[;] voting registration[;] driver's license and automobile registration[;] location of brokerage and bank accounts[;] membership in fraternal organizations, churches, and other associations[;] places of employment or business[;] . . . payment of taxes[;] . . . whether a person owns or rents his place of residence[;] the nature of the residence (i.e., how permanent the living arrangement appears)[;] . . . and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.

Kennedy, 633 F. Supp. 2d at 81 (internal quotation marks and citations omitted). "No single factor is determinative, and courts must consider the 'totality of the evidence.'" Id. (quoting Nat'l Artists Mgmt. Co., 769 F. Supp. at 1228)

### B.  Burden of Proof

"[I]t is well established that '[t]he party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete.'" Herrick Co. v. SCS Commc'ns, Inc., 251 F.3d 315, 322-23 (2d Cir. 2001) (quoting Advani Enter., Inc. v. Underwriters at Lloyds, 140 F.3d 157, 160 (2d Cir. 1998)). The standard of proof is "by a preponderance of the evidence." Techno-TM, LLC v. Fireaway, Inc., 928 F. Supp. 2d 694, 696 (S.D.N.Y. 2013) (citing Aurecchione v. Schoolman Transp. Sys. Inc., 426 F.3d 635, 638 (2d Cir. 2005)).[3]

---

[3] Plaintiff cites case law in which a party seeks to defeat diversity jurisdiction by claiming that he, she, or it changed domiciles. (See Pltf. Br. (Dkt. No. 51) at 17-18) In such circumstances, the party alleging a change in domicile "has the burden of proving the 'require[d] . . . intent to give up the old and take up the new [domicile], coupled with an actual acquisition of a residence in the new locality,' and must prove those facts 'by clear and convincing evidence.'" Palazzo ex rel. Delmage, 232 F.3d at 42 (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984)). This is not that case. It is undisputed here that the Montes abandoned their New

9

## II.  RELEVANT EVIDENCE

The affidavits and supporting documents submitted by the parties demonstrate the following: In 2005, the Montes – who maintained their "primary home" in New York – purchased a condominium in Jupiter, Florida to use as a "second home," and the couple began to "split time" between New York and Florida. (A. Monte Decl. (Dkt. No. 46) ¶¶ 7, 9) In 2011, Fortune Monte sold his business in New York and, according to declarations submitted by the Montes,[4] the couple "made plans to move permanently to Florida." (Id. ¶ 10) In April 2011, however, the Montes purchased a two-bedroom condominium in Richmond, Virginia, near the couple's daughter and grandchildren. (Id. ¶ 11) The Montes sold their New York home in August 2011, and the closing occurred on September 26, 2011. (Id. ¶¶ 12-13, Ex. D) Both the formal closing documents and mortgage satisfaction – dated October 14, 2011 – were sent to the Virginia condominium. (Id. ¶ 14, Ex. D; Katze Decl. (Dkt. No. 57) ¶ 2, Ex. A) The Montes also spent time at the Virginia condominium after the sale of their New York home in order to furnish the Virginia condominium with items from their New York home. (A. Monte Decl. (Dkt. No. 46) ¶ 14) The Florida condominium was already furnished by that time. (Id.)

After selling their New York home, the Montes "began staying at the Jupiter Condominium until [they] could find a house in Florida to make [their] permanent home." (Id. ¶ 12) In November 2011, the Montes found a new home in Jupiter, Florida (the "Florida Residence") and closed on the property on January 17, 2012. (Id. ¶¶ 15, Ex. E) They have made

---

York domicile in 2011. (See Def. Moving Br. (Dkt. No. 50) at 7-9, 13-15; Pltf. Opp. Br. (Dkt. No. 51) at 19, 23; Pltf. Reply Br. (Dkt. No. 56) at 4-5) What is in dispute is whether the Montes left New York for Virginia or for Florida, with Plaintiff arguing the former and Defendants contending the latter. (See Pltf. Opp. (Dkt. No. 51) at 19-23; Def. Br. (Dkt. No. 50) at 13-20) Plaintiff bears the burden of proof on that issue. Herrick, 251 F.3d at 322-23.

[4] Angela Monte has submitted a declaration in support of Defendants' motion to dismiss (A. Monte Decl. (Dkt. No. 46)), and her husband – Fortune Monte – has submitted a declaration attesting to the truth of his wife's statements. (See F. Monte Decl. (Dkt. No. 47))

10

the Florida Residence – a 3500 square foot home – their "primary residence since moving there in January of 2012."[5] (Id. ¶ 15) The Montes assert, however, that they "visit Richmond frequently and stay in the Richmond Condominium when [they] are there." (Id. ¶ 35)

The declarations and supporting documents submitted to the Court show that the Montes have substantial ties to Florida, separate and apart from the real estate they own there – and that their ties to Florida were formed prior to this litigation:

- The Montes both have Florida drivers' licenses. Fortune Monte obtained his Florida license on August 23, 2011, and Angela Monte obtained her Florida license on July 7, 2014. (Id. ¶ 16, Ex. F)

- The Montes own four vehicles, all of which are registered and insured in Florida. (Id. ¶ 18, Ex. H) The vehicles' license plates were issued on May 22, 2008, November 4, 2011, December 1, 2011, and June 29, 2015. (See id. Ex. H)

- The Montes are registered to vote in Florida – Fortune Monte since August 23, 2011, and Angela Monte since November 3, 2011. (Id. ¶ 17, Ex. G) Angela Monte has, since 2013, twice been called to jury duty in Florida. (Id. ¶ 21) The Montes voted in the 2012 presidential election in Florida. (Supp. A. Monte Decl. (Dkt. No. 54) ¶ 2)

- The Montes belong to the Johnathan's Landing Golf Club in Jupiter, Florida, and have been members there since 2005. (A. Monte Decl. (Dkt. No. 46) ¶ 8, Ex. C)

- The Montes' doctors and attorneys are located in Florida. Fortune Monte suffers from a "serious heart condition" and his primary cardiologist is based in Jupiter, Florida. (Id. ¶ 19) The Montes receive their dental care in Florida. (Id. ¶ 20, Ex. I) The Montes also used a Florida attorney to draft their wills, and executed the wills at the attorney's Florida office on September 27, 2012. (Id. ¶ 22, Ex. K)

- The Montes pay state property taxes on their Florida real estate and receive the Florida Homestead Exemption on their property tax bills for their Jupiter, Florida Residence. (Id. ¶ 23, Ex. L) The Homestead Exemption is available to "[e]very person who owns real property in Florida . . . [and] makes the property his or her permanent residence." (Supp. Liebowitz Decl., Ex. A (Dkt. No. 55-1) (Homestead Application) at 4) The Montes also listed the Florida Residence as their home address on their 2013, 2014, and 2015 federal tax returns. (A. Monte Decl. (Dkt. No. 46) ¶ 24, Ex. M)

---

[5] Since purchasing the Florida Residence in 2011, the Montes have leased the Jupiter, Florida condominium "as a source of retirement income." (A. Monte Decl. (Dkt. No. 46) ¶ 29, Ex. R)

11

- The Montes have made charitable donations to the Jupiter Medical Center Foundation. (Supp. A. Monte Decl. (Dkt. No. 54) ¶ 3, Exs. X, Z)

The declarations and supporting documents submitted to the Court show that the Montes have the following connections to Virginia.

- The Montes pay state property taxes on the Richmond, Virginia condominium. (A. Monte Decl. (Dkt. No. 46) ¶ 23, Ex. L)

- The Montes belong to the Willow Oaks Country Club in Richmond, Virginia, and have been members there since June 2012. (Id. ¶ 36, Ex. X; Katze Decl. (Dkt. No. 57) Exs. RR, SS) The Montes have a "non-resident" membership at the club.[6] (See A. Monte Decl. (Dkt. No. 46) Ex. X)

- The Montes have made political and charitable donations in Virginia. They donated to the campaign of a candidate running for the U.S. Senate on June 30, 2012, and they donated to the campaign of a candidate for the Virginia House of Delegates in 2015. (Katze Decl. (Dkt. No. 57) ¶¶ 32-35, Exs. FF-II) They also made charitable donations to the Virginia Hospital Center Foundation in 2012, and to a golfing charity in 2013. (Id. ¶¶ 29-31, Exs. CC-EE)

- The Montes have been treated by physicians in Virginia. (A. Monte Decl. (Dkt. No. 46) ¶ 19)

- The Montes' monthly statements from AT&T for their wireless cell phones are mailed to the Richmond, Virginia condominium. (Katze Decl. (Dkt. No. 57) ¶ 43, Ex. QQ)

The parties have also submitted monthly statements for some of the Montes' credit cards. (See A. Monte Decl. (Dkt. No. 46) Exs. T, U, V, X, Y; Katze Decl. (Dkt. No. 57) Exs. LL, MM, NN, OO, PP) The mailing addresses for the monthly statements vary between the Richmond, Virginia condominium and the Florida Residence, depending on the season. The Montes assert that they visit Richmond in the summer – when their grandchildren are on school

---

[6] Plaintiff disputes that the Montes qualify for "non-resident member" status. (Pltf. Opp. Br. (Dkt. No. 51) at 21-22) A non-resident membership at Willow Oaks Country Club is available to those who do not "maintain a residence[,] . . . actively engage in business, or pay local, state or federal taxes for at least nine months of the year in the City of Richmond, Virginia." (Katze Decl. (Dkt. No. 53) Ex. TT)

12

vacation – and for holidays and family celebrations. The Montes spend the remainder of the year at their Florida Residence. (See A. Monte Decl. (Dkt. No. 46) ¶¶ 15, 35)

## III. ANALYSIS

As discussed above, "[a] party's domicile is 'the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" Chen, 2016 WL 270869, at *2 (quoting Palazzo ex rel. Delmage, 232 F.3d at 42). Where, as here, "a party has more than one residence, . . . the Court should look to the party's intent." Id. (citing Nat'l Artists Mgmt. Co., 769 F. Supp. at 1227). In determining a party's intent, a court is to consider the "totality of the evidence," including:

> current residence[;] voting registration[;] driver's license and automobile registration[;] location of brokerage and bank accounts[;] membership in fraternal organizations, churches, and other associations[;] places of employment or business[;] . . . payment of taxes[;] . . . whether a person owns or rents his place of residence[;] the nature of the residence (i.e., how permanent the living arrangement appears)[;] . . . and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.

Kennedy, 633 F. Supp. 2d at 81 (internal quotation marks and citations omitted).

Here, the evidence before the Court demonstrates that, when the Montes purchased the Florida Residence in 2012, it was their intention to "ma[ke] it [their] primary residence." (A. Monte Decl. (Dkt. No. 46) ¶¶ 10, 12, 15; F. Monte Decl. (Dkt. No. 47)) This intent has been convincingly demonstrated not merely by the Montes' assertions in their declarations, but also by their actions in purchasing the Florida Residence and since the purchase of this home.

As an initial matter, the size of the Florida Residence suggests that it was intended to be the Montes' primary residence. This 3500 square foot home – equipped with a swimming pool and dock – dwarfs in size the two-bedroom Richmond, Virginia condominium.

13

The Montes also both hold Florida drivers' licenses and own four cars, all of which are registered and insured in Florida. See Nat'l Artists Mgmt. Co., 769 F. Supp. at 1228 ("Among the influential factors [relevant to intent] are the place where . . . personal property (such as furniture and automobiles) [are] located, [and] drivers . . . licenses [are] obtained . . . .").

The Montes also registered to vote in Florida in 2011, shortly after the sale of their New York home. (A. Monte Decl. (Dkt. No. 46) ¶ 17, Ex. G) "'[A]lthough a person's voter registration is not a conclusive indication of domicile, it is an important consideration.'" Wiest v. Breslaw, No. 01 Civ. 5663 (LMM), 2002 WL 413925, at *4 n.4 (S.D.N.Y. Mar. 15, 2002) (quoting Townsend Rabinowitz Pantaleoni & Valente, P.C. v. Holland Indus., Inc., 109 F.R.D. 671, 673 (S.D.N.Y. 1986)). A court may give "little weight" to the "mere registration to vote" absent evidence of exercising that right, see Boston Safe Deposit and Trust Co. v. Morse, 779 F. Supp. 347, 349 (S.D.N.Y. 1991), but here the Montes voted in Florida during the 2012 presidential election. (Supp. A. Monte Decl. (Dkt. No. 54) ¶ 2) Moreover, since 2013, Angela Monte has twice been called to jury duty in Florida. (A. Monte Decl. (Dkt. No. 46) ¶ 21, Ex. J)

The Montes also use doctors, dentists, and attorneys based in Florida. Fortune Montes – who suffers from a "serious heart condition" – maintains his "primary cardiologist" in Jupiter, Florida, and both Montes receive their dental care in Florida. (Id. ¶¶ 19-20) Moreover, on September 27, 2012 – within a year of the sale of their New York home and alleged relocation to Florida – the Montes used a lawyer in Florida to prepare their wills. (Id. ¶ 22, Ex. K)

As to taxes, it is undisputed that the Montes pay state property taxes in both Virginia and Florida. (A. Monte Decl. (Dkt. No. 46) ¶ 23, Ex. L) However, the Montes have listed the Florida Residence as their address on their federal tax returns since 2013. (Id. ¶ 23, Ex.

M) See Halbritter v. Stonehedge Acquisition Rome II, LLC, No. 07 Civ. 3848 (WHP), 2008 WL 926583, at *3 (S.D.N.Y. Apr. 2, 2008) (fact that party "listed [her] Florida address on her tax forms" weighed in favor of intent to establish domicile in Florida). Moreover, on their Florida state tax returns, the Montes claim the Florida Homestead Exemption, which is available only to permanent residents. (A. Monte Decl. (Dkt. No. 46) ¶ 23, Ex. L; Supp. Liebowitz Decl., Ex. A (Dkt. No. 55-1) (Homestead Application) at 4) That the Montes applied for and received this exemption evinces an intent to remain in Florida permanently.[7]

Finally, the Montes' credit card and country club billing statements support their assertion that they intend to maintain Florida as their primary residence. Considered as a whole, these records indicate that during the period from 2013 to 2015, the Montes spent more months in Florida – as compared to Virginia – each year. (See A. Monte Decl. (Dkt. No. 46) Exs. C, T, U, V, X, Y; Katze Decl. (Dkt. No. 57) Exs. LL, MM, NN, OO, PP; see also Rubin v. Hirschfeld, No. 00CV1657 (PCD), 2002 WL 32506932, at *2 (D. Conn. Mar. 20, 2002) (party deemed domiciled in Florida where, inter alia, he spent 50% of the year at his Florida residence). Acknowledging that the Montes are in Virginia for the summer school vacation period, as well as certain holidays and family celebrations (see A. Monte Decl. (Dkt. No. 46) ¶ 35), these facts do not – under the circumstances here – demonstrate an intent to establish Virginia as their

---

[7] Citing Durst v. Siegler, No. 04 Civ. 6981 (RMB), 2005 WL 3358599, at *7 (S.D.N.Y. Dec. 7, 2005), Plaintiff argues that these facts "merely evidence that the Montes want to avoid paying Virginia state income taxes." (Pltf. Opp. Br. (Dkt. No. 51) at 24-25) In Durst, however, plaintiff had asked his accountant to prepare projections of tax savings if he moved outside New York, and there was evidence that plaintiff did, in fact, realize substantial savings by filing New York income tax forms as a non-resident. Durst, 2005 WL 3358599, at *7. Here, there is no such evidence. Moreover, Plaintiff's argument is belied by the Montes' substantial connections to Florida. See Rubin v. Hirschfeld, No. 00 Civ. 1657 (PCD), 2002 WL 32506932, at *2 (D. Conn. Mar. 20, 2002) (rejecting tax evasion argument where defendant spent half of the year in Florida and had "ties to the state [that] are more than . . . superficial").

domicile.[8]  See Korb v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 03 Civ. 10333 (CSH), 2006 WL 300477, at *2 (S.D.N.Y. Feb. 7, 2006) (finding New Jersey domicile based on family ties, drivers' license, voter registration, and address on tax returns, despite evidence showing that, because of employment, party spent the work week and some weekends at a residence in Pennsylvania).

Even construing the evidence "in the light most favorable to the plaintiff," Boston Safe Deposit & Trust Co., 779 F. Supp. at 348, the "totality of the evidence" demonstrates that the Montes have maintained their domicile in Florida since 2011. See Rubin, 2002 WL 32506932, at *2 (finding domicile in Florida based on voter registration and active voting, driver's license, two vehicles with Florida registrations, location of primary physician and dentists, and execution of will; rejecting claim of Connecticut domicile based on ownership of a residence, employment, physicians, and having credit card statements sent there).

\*       \*       \*       \*

On February 23, 2016, when the Complaint was filed, the Montes were domiciled in Florida. Because the Montes are members of Defendant Ozado Power LLC, that entity is a Florida citizen. Because Ozado Power LLC is a member of Defendant Erie Power LLC, Erie Power LLC is a citizen of Florida. Bayerische Landesbank, 692 F.3d at 49 ("[A] limited liability company . . . takes the citizenship of each of its members."). Since Plaintiff is also a citizen of Florida, complete diversity of citizenship does not exist and – given that the Complaint pleads only state law causes of action – there is no basis for the exercise of federal question jurisdiction. Accordingly, this Court lacks subject matter jurisdiction, and Defendants' Rule 12(b)(1) motion

---

[8] Moreover, the fact that the Montes "maintained a residence in [Virginia] does not contradict [their] claimed intent to remain in [Florida], as a person can have more than one residence at a time." Chen, 2016 WL 270869, at *3 (citing Kavowras v. Pinkerton Inc., No. 97 Civ. 6098 (MBM), 1998 WL 209617, at *1 (S.D.N.Y. Apr. 29, 1998)).

16

to dismiss will be granted. See Schacht, 524 U.S. at 389 ("Where original jurisdiction rests upon Congress' statutory grant of 'diversity jurisdiction,' this Court has held that one claim against one nondiverse defendant destroys that original jurisdiction.").

### C. Leave to Amend

"When a motion to dismiss is granted, 'the usual practice is to grant leave to amend the complaint.'" Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990) (citation omitted). "Leave to amend, though liberally granted, may properly be denied for[] 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). "[I]t is well-settled that leave to amend should not be granted if the amendment would be futile in curing subject matter jurisdiction defects." U.S. Underwriters Ins. Co. v. Ziering, No. 06 Civ. 1130 (JFB) (WDW), 2010 WL 3419666, at *9 (E.D.N.Y. Aug. 27, 2010) (citing Ruotolo, 514 F.3d at 191).

Here, non-diverse Defendants Ozado Power LLC and Erie Power LLC are named in only two of the seven causes of action properly pleaded in the Complaint.[9] (See Cmplt. (Dkt. No. 2) ¶¶ 105-112) Based on the current record, this Court cannot find that any "amendment would be futile in curing subject matter jurisdiction defects." See U.S. Underwriters Ins. Co., 2010 WL 3419666, at *9. Plaintiff is therefore granted leave to file an Amended Complaint.

---

[9] Under Fed. R. Civ. P. 21, "'a court [may] drop a nondiverse party at any time to preserve diversity jurisdiction, provided the non-diverse party is not "indispensable" under Rule 19(b).'" Quantlab Fin., LLC, Quantlab Techs. Ltd. (BVI) v. Tower Research Capital, LLC, 715 F. Supp. 2d 542, 549-50 (S.D.N.Y. 2010) (quoting CP Solutions PTE, Ltd. v. Gen. Elec. Co., 553 F.3d 156, 159 (2d Cir. 2009) (citations omitted)). Here, the parties have not addressed the applicability of Rule 21, or whether non-diverse Defendants Ozado Power LLC and Erie Power LLC are indispensable.

17

## **CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss is granted. The Clerk of the Court is instructed to terminate the motion (Dkt. No. 45). Any Amended Complaint will be filed by April 24, 2017.

Dated: New York, New York
       March 25, 2017

SO ORDERED.

*Paul G. Gardephe* (signature)

Paul G. Gardephe
United States District Judge